**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEORGE CLARITT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-0544** |
| **v.** | : | **(JUDGE MANNION)** |
| **CORRECT CARE SOLUTIONS,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

I.    **Background**

Plaintiff, George Claritt, an inmate formerly confined at the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The only named Defendant is Correct Care Solutions, LLC ("CCS"). Id. The action proceeds via an amended complaint. (Doc. 5).

Plaintiff alleges that on November 30, 2013, while working as an inmate janitor at SCI-Dallas, Plaintiff "fell when he slipped on a wet concrete floor, causing injury to his left knee and quad muscle of his left thigh". (Doc. 5, amended complaint). Plaintiff was examined by the prison's medical

---

[1] Plaintiff is currently housed at the Laurel Highlands State Correctional Institution, Somerset, Pennsylvania.

director, Dr. Standish, who was then allegedly employed by "Wexford" (not CCS).  Id. Dr. Standish prescribed a knee brace along with physical therapy. Id.

On February 27, 2014 Nancy Palmigino, PA, allegedly "wrote" that Plaintiff had a "probable muscle tear" in his left knee. Id.

Plaintiff alleges that on September 1, 2014, CCS took over as the SCI-Dallas health care provider. Id.

Plaintiff claims that on October 6, 2014, an outside consultant ordered an MRI of his left thigh. Id. On November 26, 2014, Plaintiff was "sent to Wilkes-Barre Imaging for an MRI." Id.

Plaintiff states that on June 12, 2015, a telemedicine conference with Dr. Standish and the orthopedic specialist, Dr. Gerdonay revealed that "any window for easy repair is long past" and noted a history of Plaintiff being " '...uncooperative with clinical recommendations which made him a bad candidate for treatment process which would require rehabilitation in order to be successful.'" Id. Plaintiff further claimed that the orthopedic specialist based this opinion on a defamatory statement made by Dr. Stanish, which, Plaintiff alleges, was made "for the purpose of keeping Dr. Gerdonay from recommending rehabilitation for Plaintiff." Id.

On October 20, 2015, Plaintiff states that he was then sent to Geisinger Medical Center, where he was advised by a knee specialist that he suffered a torn quadriceps muscle, and no surgical intervention was possible. Id.

The remainder of Plaintiff's Amended Complaint describes various medical interventions provided by medical providers allegedly associated with CCS between 2015 and November 2019.  Id. at ¶ 28-50.

On March 2, 2020, Plaintiff filed the above captioned action in the Luzerne County Court of Common Pleas. (Doc. 1). By Notice of Removal dated April 2, 2020, the above captioned action was removed to this Court, where it was filed the same date. Id. Count I of the Amended Complaint attempts to assert a cause of action for Breach of Contract based upon an allegation that, "CCS has failed to follow the [McKesson] Interqual [criteria] recommendations to promptly send patients for MRI/ Orthopedic consultations for the type of injury suffered by the Plaintiff here." (Doc. 5 at ¶ 52). Count II of the Amended Complaint, for "Deliberate Indifference", claims that CCS developed an "unwritten policy" of delaying medical treatment for injuries such as Plaintiff's.  Id. at ¶ 55.

For relief, Plaintiff seeks compensatory and punitive damages. (Doc. 5).

By Memorandum and Order dated February 19, 2021, this Court granted Defendant's motion to dismiss, finding Plaintiff's complaint barred by the applicable statute of limitations. (Doc. 16, 17).

Presently before the Court is Claritt's motion for reconsideration of this Court's February 19, 2021 Memorandum and Order, closing the above captioned action. (Doc. 18). For the reasons that follow, the Court will deny the Plaintiff's motion.

## II.  Discussion

A motion for reconsideration is a device of limited utility, which may "not be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (citations omitted); see also Baker v. Astrue, Civ. No. 07-4560, 2008 WL 4922015, at *1 (E.D. Pa. Nov. 17, 2008). Rather, a court may alter or amend its judgment only upon a showing from the movant of one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence ... or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co.,

52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate when a court has "patently misunderstood a party or has made a decision outside the adversarial issues presented to the [c]ourt by the parties or has made an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)), *vacated in part on other grounds on reconsideration*, 915 F. Supp. 712 (M.D. Pa. 1996). "It may not be used as a means to reargue unsuccessful theories or argue new facts or issues that were not presented to the court in the context of the matter previously decided." Gray v. Wakefield, No. 3:09-cv-979, 2014 WL 2526619, at *2 (M.D. Pa. June 4, 2014); see also Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden'."). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

A review of this Court's Memorandum and Order reveals that the Court found Plaintiff's complaint untimely as follows:

Plaintiff alleges that he suffered an injury from a fall on November 30, 2013. (Doc. 5). He claims that he learned that he had suffered a torn quadricep, at the very latest, on April 10, 2014, when Dr. Stanish recorded the diagnosis in Plaintiff's Consultation Record. 4/10/14. Id. On June 12, 2015, Plaintiff states that he was advised that "any window for easy repair is long past."

Taking Plaintiff's allegations as true, it is clear that Plaintiff actually knew of his alleged injury and the alleged inability to surgically repair his quadriceps, no later than June 12, 2015. Plaintiff's action was not filed in the Court of Common Pleas until March 2, 2020, almost five years beyond the latest date of his actual knowledge of his injury. Thus, Plaintiff's action is barred by the statute of limitations as untimely.

In his brief in opposition, Plaintiff acknowledges that the personal injury statute of limitations is two years, but argues that his action should be considered as a "breach of contract claim, which has a 6 year statute of limitations." (Doc. 14 at 2). The Court finds no merit to Plaintiff's argument.

Initially, the Court notes that the statute of limitations for a breach of contract claim in Pennsylvania is four years. See 42 Pa. C.S. §5525. However, even applying the four year statute of limitations to Plaintiff's claims, his action is untimely, as Plaintiff was advised on June 12, 2015 that "the window for easy repair is long past". Even under contract law, Plaintiff's action would have to have been filed on or before June 12, 2019, to have been timely.[2] Consequently, Plaintiff's March 2, 2020 filing is untimely.

---

[2] Regardless of the timeliness, any contention that Plaintiff is a third-party beneficiary of a contract between the Commonwealth of Pennsylvania and CCS, fails as a matter of law, as Plaintiff lacks standing as an express third-party beneficiary to bring a breach of contract claim and cannot, as a matter of law, establish a plausible claim for relief. See Ziegler v. Correct

*(footnote continued on next page)*

(Doc. 16 at 7).

Plaintiff now files a motion for reconsideration, claiming that this Court made a clear error of law when it held that Plaintiff lacks standing as a third party beneficiary to bring a breach of contract claim, when it ignored Plaintiff's argument that the statute of limitations was tolled and when it calculated the statute of limitations from the date Plaintiff was told "the window for easy repair is long past", instead of from the date each time the contract was breached by Defendant when it failed to utilize the Interqual criteria in its utilization determination. (Doc. 18).

## A. Intended Third-Party Beneficiary

Plaintiff argues that he is a third-party beneficiary of the contract between the Pennsylvania Department of Corrections and Correct Care and that the Court's reliance on Ziegler v. Correct Care Sys., No. 1:16-CV-1895, 2018 WL 1470786, at *9 (M.D. Pa. Mar. 26, 2018) in its footnote, is misplaced, and that Guy v. Liederbach, 459 A.2d 744 (Pa. 1983) is controlling in this situation. (Doc. 19 at 3-5). His theory is that he is a third-party beneficiary of Correct Care's contract because he received the benefit

Care Sys., No. 1:16-CV-1895, 2018 WL 1470786, at *9 (M.D. Pa. Mar. 26, 2018).

- 7 -

of the medical services contemplated by the contract. Plaintiff's claim is without merit.

As a general rule, under Pennsylvania law, a non-party to a contract is a third-party beneficiary only where both contracting parties have expressed an intention to benefit the party in the contract itself. Brown v. Wexford Health Sources, Inc., 2018 WL 3156856, *13 (W.D. Pa. June 28, 2018) (citing Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147, 149 (Pa. 1992); Spires v Hanover Fire Ins. Co., 364 Pa. 52, 70 A.2d 828 (Pa. 1950) ). Pennsylvania has recognized a limited exception to this general rule where the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983). This exception "leaves discretion with the trial court to determine if recognition of the third-party beneficiary status would be 'appropriate'." Guy, 459 A.2d at 751. When applying this exception, Pennsylvania courts require that the circumstances surrounding the contract be "compelling" before finding that recognizing a third-party beneficiary is appropriate to effectuate the intention of the parties. Scarpitti, 609 A.2d at 150–51 (citation and quotations omitted). There must be a showing that the alleged beneficiary

falls within one of two categories of intended beneficiary—creditor or donee beneficiaries. Id.

At least one Pennsylvania court and federal courts within this Circuit and elsewhere have uniformly found this exception inapplicable in cases where a prison inmate has claimed to be a third-party beneficiary of a contract between a department of corrections and a medical provider. See, e.g., Ziegler v. Correct Care Systems, 2018 WL 1470786 at *4 (M.D. Pa. March 26, 2018); Battle v. Prison Health Servs., 120 A.3d 391 (Pa. Super. 2015); Flournoy v. Ghosh, 2010 WL 1710807 (N.D. Ill. April 27, 2010); Ali v. DOC, 2008 WL 5111274, at *5 (D.N.J. Nov. 25, 2008). The court in each of these cases found the facts alleged were insufficient to support third-party beneficiary status.[3]

---

[3] If Claritt is an intended third-party beneficiary of the contract between the DOC and Correct Care, it would appear that all inmates within the custody of the DOC would be entitled to claim that same status. It is far from clear, however, that Pennsylvania law contemplates granting third-party beneficiary standing to such a large class of individuals. See Guy, 459 A.2d at 747 (noting that "the grant of standing to **a narrow class of third-party beneficiaries** seems 'appropriate' under Restatement (Second) of Contracts §302 where the intent to benefit is clear and the promisee ... is unable to enforce the contracts") (emphasis supplied). Even if Pennsylvania law were found to permit this result, the breath of the application of third-party beneficiary standing would at least bear on whether the parties intended such a result.

Plaintiff's complaint fails to plead facts sufficient to support third-party beneficiary standing. He does not sufficiently alleged that there was an express contractual intent to make him a third-party beneficiary of the relevant contract. To the extent that he submits as an exhibit in support of his claim of standing, the Utilization Review portion of the contract between DOC and CCS (Doc. 5 at 11), this document does nothing to support his contention that he would have standing under the contract even if the test in Guy was applied. The Utilization Review portion of the contract makes no reference to inmates, but rather it is for DOC Medical Directors to evaluate which medical services may be necessary. Id. There is nothing to indicate that recognition of Plaintiff's alleged right under the contract, would be necessary to effectuate the intention of the contracting parties to use the "McKesson Interqual", nor that the contracting parties intended Plaintiff to be a third-party beneficiary. Accordingly, Plaintiff's claim is without merit.

## B. **Statute of Limitations**

Plaintiff, relying on Bailey v. Tucker, 621 A.2d 108 (Pa. 1993) argues that the statute of limitations for a claim of breach of written contract is six years, not four, as held by this Court. (Doc. 19 at 5). Thus, Plaintiff argues that "this Court should follow the holding in Bailey or explain why that holding is incorrect." Id.

Pennsylvania has a four-year limitations period for "an action upon an express contract not founded upon an instrument in writing" or "an action upon a contract implied in law." 42 Pa.C.S. §5525. A two-year statute of limitations applies to "any ... action or proceeding to recover damages for injury to person or property which is founded on negligent ... or otherwise tortious conduct." 42 Pa.C.S. §5524(7).

The correct statute of limitations applicable to this action is the two-year statute of limitations applicable to personal injury actions, 42 Pa.C.S. §5524 as Plaintiff's action clearly involved alleged tortious conduct. Applying this statute of limitations to the latest date of Plaintiff's actual knowledge of his injury, June 12, 2015, the Court found that his complaint, filed in the Court of Common Pleas on March 2, 2020, was five years beyond the latest date of his actual knowledge of the injury, and thus, was barred. The Court further found that even providing Plaintiff with the benefit of the four-year statute of limitations applicable to contracts, 42 Pa.C.S. §5524, his claims would still be barred. This decision is not troubled by manifest errors of law or fact. To the extent that Plaintiff argues that pursuant to Bailey, he is entitled to a six-year statute of limitation, he is mistaken.

In Bailey, two cases were consolidated in which two appellants, clients, brought civil suits against appellees, attorneys, for legal malpractice. In both

- 11 -

cases appellants had been convicted of a crime, and upon appeal it was found that appellees had provided ineffective assistance of counsel, and the convictions were different after a second trial. The court determined that appellants could bring a civil suit against appellees under both a trespass theory and an assumpsit theory. Further, as to one of the cases, the Court held that the appellant had filed the criminal malpractice action well beyond the two-year limitations period applicable to trespass actions, and that the only period of limitations under which the appellant could sustain his assumpsit cause of action would be the six-year statute with respect to written contracts pursuant to 42 Pa.C.S. §5504. Id. at 117.

The Bailey Court, however, noted that because the appellant had not alleged that a written contract existed between himself and the appellee, the longest possible period of limitations that could apply would be the four-year period for an oral contract. This same rationale applies herein. There is no written contract between Plaintiff and CCS and, as such, the longest possible applicable statute of limitations is four years.

### C. **Fraudulent Concealment**

Plaintiff argues that CCS's "lack of notice to the inmate population and use of the same medical personal as Wexford, constitutes Correct Care's actively concealing its identity." (Doc. 19 at 5). Specifically, Plaintiff alleges

- 12 -

that "[o]n February 20, 2018, Plaintiff complained to the CHCA about Dr. Mihaly" and "[t]he CHCA sent a  memorandum to Plaintiff on February 26, 2018, which identified CCS, for the first time, as the medical services provider." (Doc. 5 at 6).

The doctrine of fraudulent concealment tolls the statute of limitations when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." Ciccarelli v. Carey Can. Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985). There must be an affirmative and independent act of concealment for this doctrine to apply. See Gee v. CBS, Inc., 471 F.Supp. 600, 623 (E.D.Pa. 1979). "The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." Fine v. Checcio, 582 Pa. 253, 870 A.2d 850, 860 (Pa. 2005). As with the discovery doctrine, the doctrine of fraudulent concealment tolls the statute of limitations until the plaintiff "knew or using reasonable diligence should have known of the claim." Vernau v. Vic's Market, Inc., 896 F.2d 43, 46 (3d Cir. 1990). The plaintiff bears the burden of pleading facts sufficient to establish fraudulent concealment by "clear, precise, and convincing evidence." See Fine, 870 A.2d at 860.

Plaintiff argues that CCS concealed the fact that CCS had taken over the providing of medical services from Wexford beginning in September 2014 until Plaintiff received a memorandum stating such in February 2018. However, even if Plaintiff were correct, Plaintiff has not shown that this alleged concealment diverted or mislead Plaintiff from discovering his injury. Plaintiff, himself, admits that he knew as of June 12, 2015, that he had been injured as he was told that "the window for easy repair is long past." (Doc. 5). Any concealment, therefore, had no effect on Plaintiff's ability to discover his injury as it was known almost three years prior to his receiving of the 2018 memorandum. Therefore, even if there was concealment, it would not toll the statute of limitations as it did not divert or mislead Plaintiff from discovering his injury.

However, even operating on Plaintiff's alleged notice date of February 20, 2018, his action, filed in the Luzerne County Court of Common Pleas on March 2, 2020 (Doc. 1-2 at 23), is still beyond the applicable two-year personal injury statute of limitations.

### D. **The Discovery Rule**

Plaintiff argues that this Court's finding that Plaintiff was aware of his injury on June 12, 2015, when he was told that "the window for easy repair is long past," ignores that "a breach of contract claim arises whenever a party

has breached its duty under its contract." (Doc. 19). Thus, he concludes that "in this case, the duty Defendant assumed was to use Interqual criteria in making utilization decisions, so each utilization decision that does not use Interqual criteria, creates a new cause of action." Id.

Pennsylvania's discovery rule provides that the statute of limitations on a personal injury claim will not begin to run until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003) (internal quotation marks and citation omitted). "Every plaintiff has a duty to exercise 'reasonable diligence' in ascertaining the existence of the injury and its cause." Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." Dalrymple v. Brown, 549 Pa. 217, 701 A.2d 164, 167 (Pa. 1997).

Plaintiff argues that the discovery rule applies because the statute began to run from "each time the contract was breached by the Defendant when it failed to utilize the Interqual criteria in its Utilization Determination." (Doc. 18). Under Plaintiff's theory, his complaint was filed well within the two-year statute of limitations period because limitations period only began to run

from the date of his last prison medical visit, which, according to Plaintiff's amended complaint could have been anywhere from April, 2018 through his last visit on November 27, 2019. (Doc. 5 at 7).

Although Plaintiff's argument is creative, "creativity cannot replace common sense." Dalrymple, 701 A.2d at 170. Plaintiff knew that he injured his left knee on November 30, 2013, the day he fell. (Doc. 5). On April 10, 2014, it was determined that Plaintiff suffered a torn quadricep, and, at the very latest, on June 12, 2015, he learned that "any window of easy repair is long past." Id. "The very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the **nature of the injury itself** is such that no amount of vigilance will enable the plaintiff to detect an injury." Dalrymple, 701 A.2d at 170. (emphasis added). After "focusing on the nature of the injury rather than the particularities of the specific plaintiff," id. at 171, the Court holds as a matter of law that Plaintiff could have learned the cause of his physical injuries through the exercise of reasonable diligence shortly after his November 30, 2013 fall, his diagnosis of a torn quadricep, or at the very latest, after his medical consult on June 12, 2015. Consequently, the discovery rule did not toll the statute of limitations.

## VI. <u>Conclusion</u>

For the reasons set forth above, this Court finds that its Memorandum and Order of February 19, 2021, is not troubled by manifest errors of law or fact and Plaintiff has not presented anything new, which if previously presented, might have affected our decision. Consequently, the motion for reconsideration will be denied.

A separate Order shall issue.



<u>*s/ Malachy E. Mannion*</u>
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 31, 2022**
20-0544-02